Our first case this morning is 091448, Ceiva Logic v. Frame Media. Mr. Hecker. Thank you. May it please the court, my name is Gary Hecker, counsel for Appellant Ceiva Logic. I will address two issues for the court's consideration, relying on our briefs for the remainder. We submit it was a clear error of law, and therefore an abuse of the district court's discretion, to deny Ceiva's motion for preliminary injunction for infringed patent claim 6, which is not the subject of patent reexamination, based on the fact that independent claim 1 was under patent reexamination. We submit it was also a clear error of law for the district court to enter a stay of proceedings because that stay order is inextricably intertwined with the erroneous conclusions drawn by the district court in denying Ceiva's motion for preliminary injunction. The PTO determined that there was no substantial new question of patentability for claim 6, and thus stated it is not agreed that an SQN exists regarding claim 6, that's at A0725. Ceiva sought a preliminary injunction only for claim 6, which is not the subject of reexamination. Judge Book Counsel, on page 15 of the district court's opinion, it indicates the district court says Ceiva has not demonstrated likelihood of success because it has not shown that the additional limitation in claim 6 would be valid if claim 1 is invalidated, and it goes on to say because claim 6 merely adds a provision regarding authentication, which is notoriously well-known in the field of networking devices. So while your characterization, if true, would be troubling, it does seem that the court went on and either alternatively or they went ahead and found that claim 6, there is no likelihood of surviving a validity challenge on the alternative, regardless of what the PTO did in terms of not taking reexam authority over claim 6. We submit, Your Honor, that no analysis was done by the court. They state where you mentioned that with respect to a general statement having to do with authentication, that that somehow invalidated claim 6. What the court failed to do, as Titan Tire would require, would be to undertake an analysis of the claim itself. There's no discussion of any of the prior art. There's no mention of any of the prior art. In fact, the court says at A0012, here the PTO rejected claims 1 and 7 in its initial action. The court acknowledges that each claim must be analyzed independently. However, the court finds that the PTO's action raises questions concerning the validity of claim 6. And they go on to say, first, as noted above, courts have found that a rejection of a claim raises a substantial question of validity, which is not true as to that claim in the context of a motion for preliminary injunction. When you say it's not true, I mean, isn't it reasonable? Suppose that the only question you were raising to us today was claim 1 and you were asking for a preliminary injunction on claim 1. Wouldn't it have been reasonable for the PTO to say there's no likelihood of success on the merits for the reasons articulated in the PTO's rejection of claim 1? No, Your Honor, that would be incorrect. Really? I can't imagine why that is. Well, the reason that is is because the standard at the United States Patent and Trademark Office is different than the one that's required for considering preliminary injunction under Titan Tire. There needs to be a determination that there's a substantial question of validity after considering all of the prior art for the relevant claim involved. The standard at the United States Patent and Trademark Office when examining patents in any context is whether there is a substantial new question of patentability in this case using the broadest reasonable interpretation standard. The standards that are used are very different. The standard at the patent office is much lower than the standard at the court and that's because there's an opportunity to amend at the patent office but there's no opportunity to amend in court. The court's supposed to look at the claims with the notion of having those claims be viewed as being valid if there is an interpretation of those claims so as to be able to make them valid. Here, the patent office has expressly said, for example, on the issue of what a frame device is, the patent office said in the re-examination proceeding that the interpretation of the term frame device is a reasonable interpretation under MUYO. That should have been the interpretation that the court applied in the preliminary injunction analysis but the court expressly stated that it simply didn't do that analysis. Isn't this a likelihood of success test? This isn't a proof of success. Unfortunately, preliminary injunction motions and the results of them are sometimes back of the envelope style of decision making because it's all done in a hurry without a fully developed record, without a full claim construction analysis and that's why we have been very careful in reviewing district court claim construction at preliminary injunction stage to say it's not absolutely dispositive and the lower court is free to change its mind when a more fully developed record exists. So why, in light of the relaxed likelihood of success standard, isn't it adequate for the district court to say there isn't a likelihood of success? I'm not saying there's no success. I'm not saying there's no chance of success but that there's no likelihood of success when the PTO has in fact rejected the claim. First of all, the PTO did not reject the claim. Well, but we're still talking about my hypothetical. I'll move you on to claim six. I submit, Your Honor, that even if it was claim one for which we sought a preliminary injunction, the court's reasoning was still incorrect under Titan-Tyer and that's because under Titan-Tyer the court would have need to consider whether it was more likely than not that the challenger could prove by clear and convincing evidence at trial invalidity of the claim. So it's not clear and convincing doesn't have to be proven at that stage, preliminary injunction stage, but there is a requirement to show that it would be more probable than not. Well, that would require that the analysis be done with respect to the claims, not simply adopting what the patent office said about claim one because the patent office is looking at the claim interpretation from a broadest reasonable interpretation standard, giving the applicant, if you will, the opportunity to modify a claim. But at the district court stage, they would need to give those claims an interpretation that if there's more than one claim interpretation, that the claims would be valid. And the court, in fact, found that all of the relevant claims were infringed and, in fact, we sought a preliminary injunction only with respect to claim six. And, of course, I still will stay with your hypothetical. I submit, Your Honor, that even if it was claim one, which it was not, the court still failed to undertake the requisite analysis and also the- Well, the claim adopted the PTO's analysis. It doesn't need to spell out what was already spelled out at the patent office. I submit that under Swanson, I believe it is, you can't just adopt the PTO's analysis because it's doing a different analysis. It's looking at the claims from the broadest reasonable interpretation standard and that standard will give you a prospectively different outcome. It's not to say that you could not get a similar outcome, but you need to do the analysis using the appropriate standard. And using the PTO standard is simply incorrect for the district court to do. It needs to look at the standard based on Titan Tire. It needs to look at the standard based on- in view of Swanson. And it needs to show in some way that it considered the art, not just saying, you know, they rejected claim one in the re-examination. So I think that portends that claim six would be invalid because of general issues of authentication. There was no coming forward of the evidence. The presumption of validity was, I submit, was not taken into account, even though there was a statement that it purportedly was. What about the evidence that was submitted by Cram Media regarding the validity of claim six? Forgetting about claim one, but claim six, the evidence that was submitted by them was not rebutted. Isn't that your responsibility to rebut that particular evidence? I submit, Your Honor, that- two things. First, that that evidence, while there was art submitted, there was a leap made first with respect to claim one, which is Muyo and Boteto, I believe. And then with the other art that was identified, there's no discussion or analysis of any motivation to combine that art. There's no analysis done by the challenger that says why there would be a motivation to combine. We need to look at all of the elements of claim six as claim six. You can't just take some art on the one hand and other art on the other and make no discussion or consideration of how there would be a motivation to combine that art. But if the evidence they submit raised the likelihood of success and the validity of claim six, and you don't rebut that evidence, notwithstanding the fact that the court might not have weaved it completely to your liking, but there was no evidence to rebut the submission that was made, the burden shifts to you at that point to rebut that evidence. If it's not rebutted, then the court does have a right to say no, if it's not rebutted, then no PI will issue. Well, Your Honor, there would need to be two steps that would need to occur there. First, there would need to be some, not just a presentation of the art or a reference to the art, but a discussion of the art in the case of claim six for that particular element of motivation to combine. Secondly, which was not, there's no discussion of that whatsoever, how that art, which I'm not sure why any art that was submitted to the office was not submitted already in the inter-party re-exam query, whether you should be not, you know, if you knew about that art at the time, it's a new or should have known standard. But in any event, query, even if, the fact that that art was merely submitted, but there was no analysis done as to how there's a motivation to combine, that's number one. And number two, the court then says expressly that they're not, they didn't analyze it. They didn't analyze that art, they didn't look at the art, they didn't discuss the art, they didn't reference the art. The court acknowledges that each claim must be acknowledged independently. Then they say, however, the court finds that the PTO action raises questions concerning validity of six. And they say that rejections of claims raise a substantial question of validity. Well, if that were true, that's not based on one claim having been not under re-examination in the other being, which is the case here. Claim six only added the authentication step, right? Claim six only adds a step of a particular type of authentication. That's correct, Your Honor. If, in fact, authentication is pretty well established in the art, how much more does the objector have to raise beyond that just to show the fact that it is present in the prior art? Your Honor, that's not the only claim element at issue. There are multiple claim elements that are at issue as to whether or not there would be a likelihood of success on this. Sorry, whether there would not be a likelihood of success, whether the challenger would meet its day. The frame device, in particular, was referenced by the Patent Office, and the Patent Office expressly stated that there was a reasonable interpretation which would take Muyo out altogether. If the district court had adopted that interpretation of frame device, they could not come to a different conclusion. They could not have come to a conclusion other than that Muyo is not prior art using the standard of a district court, not the standard of the Patent Office. As the Patent Office said, one interpretation… Well, let's hear from Mr. Rugg now. We'll give you your full rebuttal behind that. Thank you. Mr. Rugg? Did I pronounce your name correctly? Absolutely. Thank you, Your Honor. May it please the court, I am Alan Rugg, counsel for Frame Media. We urge the court to affirm the judgment of district court as to both the denial of the preliminary injunction motion and the stay. I would like to first address the injunction motion and addressing in particular claim number six. It is clear from the court's opinion which as to the injunction appears in the appendix 11 to 15 that the court carefully analyzed this issue. It did not impose some rule that automatically because the PTO had granted re-exam as to one in seven that claim six was somehow invalid. The court recognized the presumption of validity and then analyzed the issue. As a starting point, the elements of claim one are fairly simple. The frame device, the interface, and then a server feeding information. Is any of this in this opinion, though? As to the elements of... I don't see the opinion having any articulation of any of the claim elements. The court was... The pages I referenced, I believe, may not have addressed it. However, as this court recognizes, the district court granted summary judgment as to claim six and as to claim one. In the earlier portions of the opinion, which are not before this court on appeal because the summary judgment decision is not a final decision, but the court parsed those claim limitations. The motion for preliminary injunction was indeed focused on likelihood of success and the court's determination that SEVA had not met its burden to prove a likelihood of success because there is a substantial issue as to the validity of claim six. The court recognized that, as to the other claims, that there are no reported opinions in which the court has... A court has issued a preliminary injunction with regard to claims that are subject to re-exam and have been the subject of a first office action rejecting the claims. But did this court do any independent analysis under the correct legal standards at issue at this... In litigation as opposed to before the PTO? With regard to claim number six, the court focused on a legal analysis of the effect of the re-exam of claim one and, as counsel observed, reached the finding that the court tended issues of validity in the district court, not automatically transferring the determination. It then addressed... Well, it didn't automatically transfer the determination for all the other elements, which are the elements of claim one. Didn't it automatically adopt, without any independent analysis, a determination that all of the elements of claim one, the independent claim, are going to be treated as present because the PTO rejected that? The court indeed found that, as to those elements, the finding by the PTO raised the issue of a substantial issue of validity as to those claims. With regard to user... But what about the notion that your opposing counsel raised, which is it's a totally different standard? In the office, it's a preponderance of the evidence. In the district court, it's clear and convincing evidence. What about that sort of thing? Well, we submit to the court that the burden throughout, with regard to the preliminary injunction was on CEVA to prove that it would likely succeed on an invalidity challenge to the patent. The district court found that CEVA did not meet that burden. If I may, the court relied significantly on the findings, which was of record, the earlier prosecution, in which the original examiner had observed that user authentication was notoriously well-known in the art. Claim six, that's the only additional limitation in claim six to the claims that were invalidated. I beg your pardon, we're subject to re-exam. Where is that state of re-examination right now? What is the present state of the re-exam? It's pending. There have been subsequent office actions that the parties have briefed that are all consistent with the original first office rejection. It's not a final rejection? No, sir. No, Your Honor. Did you introduce prior art to this district court indicating that the authentication limitation was in fact well-known? I believe the record of that was the prosecution record. I don't believe we presented independent art. So the examiner's mention of authentication being well-known is the only evidence before this district court. It's a lot to rely on when obviously the PTO itself wouldn't rely on that for re-examination purposes. I'm not sure that that issue was framed in the re-exam. The issue before the office... You didn't get it. We did, but that issue was not addressed. The issue was two pieces of prior art, essentially. The Mugyo and the Boteto references. As Judge Selna observes in footnote 7, it appears that in the re-exam, the examiner reached the narrow conclusion that on the art that was presented, there was no new substantial issue of patentability presented as to Claim 6. I guess I'm wondering if an examiner's mention in the original prosecution of something being well-known without the citation of any prior art or any expert testimony or anything along those lines  as they did in this case to use. I believe that's the record before the court. It's so well-known. Why didn't you proffer some prior art? Wish you could go back and do it now, I'm sure. That invites another discussion that Judge Selna focused on, and that is the hardship to the parties, the balancing of the equities. It was not front and center in the court's determination, but the court observed that SEVA waited 10 months to bring this preliminary injunction motion. It appears it was brought for strategic purposes. Filed on the day the court was prepared to issue an order on the motion to stay, and in fact entered a tentative order a few hours later. So it was filed on the very cusp of the stay of the litigation and then two weeks later we had a hearing and the court decided the issue. We will submit as to other issues as briefed in our papers. Thank you. Thank you, Your Honors. First, with respect to the point about the consideration of other factors, the district court expressly stated that, quote, the court need not consider the other three primary factors, irreparable harm, the balance of hardships, and the public interest in a preliminary injunction analysis, because they had taken a position that there was no likelihood of success. We're not going to run all through those factors now. If a preliminary injunction was so important to the litigation, why did you wait for 10 months to file for it? Your Honor, the timing of that had to do with a couple of things. First, we had asked for the source code. We wanted to be sure that we knew how the free media device operated. So that was one of the points on irreparable harm. The Shiller Declaration, which I think is 33 in the record, the irreparable harm record shows that they're direct competitors and that there was a risk of loss of market share. All of that evidence was developed. But we finally got the source code very late in the game, having asked for it much earlier. And then around that time was when the re-exam was then coming out. And we waited until expecting the re-exam result, although that wasn't the controlling factor. They were your competitor when you filed the action, right? Absolutely, they were. They did not become your competitor 10 months later. No, they did become a competitor 10 months later. But we certainly needed to have the evidence to be able to support a preliminary injunction motion. And we didn't want to go in willy-nilly on that. So we wanted to make sure we had that evidence in place. And so we wanted to get the source code, which we finally did. And after we analyzed that source code, it was just going to be a very brief period. And we had asked for that and didn't get it until much later. Why was the source code so critical to the preliminary injunction? Well, because the system path involves the server and how the server works. And we wanted to understand how the operation of the server system. I understand that. But how does that lead to the authentication step of claim six? Well, I don't think that there's a specific relationship between the source code and the authentication step. That was their argument on the issue of authentication, not ours. And getting back to the point that it was merely raised by the office initially, notoriously well-known, that was initially raised by the office and then rejected as not being an issue. And I submit that what's really important here to understand is that while that was what was pointed out by the court, if you look at the record that was submitted on the status of the re-exam and the current re-exam, the patent office specifically says the specification does not require that a portion of the device that configures the frame device and obtains images over the interconnected fabric must be integral to the display region of the device, although a reasonable interpretation would not include that portion being in a remote location with respect to the display portion. If that finding, if you will, had been even considered, that's another reasonable interpretation and is our interpretation. MUIA would not be art separate and apart from that additional element. All of these elements have to be considered. And they didn't meet their burden in coming forward with the evidence to overcome the presumption of validity out of the box. At that point, we would not need to really do any much more at all, because even though we have shown likelihood of success, the patent is presumed to be valid. And that must be overcome by at least, under Titan Tire, enough to- OK. I think your time has expired. Thank you. Thank you very much.